**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 11, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-60183
(Summary Calendar)

DAVID PAUL TOKOPH,

Petitioner,

versus

MARION C. BLAKEY, ADMINISTRATOR,
FEDERAL AVIATION ADMINISTRATION, and
NATIONAL TRANSPORTATION SAFETY BOARD,

Respondents.

On Petition for Review of An Order of
The National Transportation Safety Board
(EA-5018)

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The petitioner, David P. Tokoph, is a pilot challenging the suspension of his pilot's certificate for operating a surplus military jet in violation of Federal Aviation Regulation, 14 C.F.R. § 91.319(c) ("Section 91.319(c)"). Tokoph petitions for review of the National Transportation Safety Board's ("NTSB") decision affirming the order of the Administrative Law Judge ("ALJ") in favor of the Federal Aviation Administration's ("FAA") charge and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

suspension.  Because NTSB's decision is not arbitrary or capricious and is supported by substantial evidence, we deny the petition for review.

## I.  FACTS & PROCEEDINGS

Petitioner Tokoph operated a North American F-100F Super Sabre (the "F-100") —— a surplus military aircraft with an experimental-category special airworthiness certificate —— under written operating limitations issued by the FAA.  While piloting the F-100 on the day in question, Tokoph made a high-speed approach to, and low-level pass over, a runway at the Lordsburg, New Mexico airport.  During this approach, the plane was in the "clean" configuration, i.e., without flaps or landing gear extended. Tokoph's airspeed was at least 300 knots.  For this maneuver, the FAA charged Tokoph with violating § 91.319(c).[1]  The aircraft-specific operating limitations issued to Tokoph for the F-100 state that the "aircraft may not be operated over densely populated areas or congested airways, except when otherwise directed by Air Traffic Control" and require that Tokoph "plan routing that will avoid

---

[1]  At the time of Tokoph's flight, Section 91.319(c) provided:

> Unless otherwise authorized by the Administrator in special operating limitations, <u>no person may operate an aircraft that has an experimental certificate over a densely populated area or in a congested airway</u>.  The Administrator may issue special operating limitations for particular aircraft to permit takeoffs and landings to be conducted over a densely populated area or in a congested airway, in accordance with the terms and conditions specified in the authorization in the interest of safety in air commerce.

14 C.F.R. § 91.319(c)(2000)(emphasis added).

2

densely populated areas and congested airways when operating VFR."
Because the Lordsburg, New Mexico-area is densely populated, the
FAA ordered a 180-day suspension of Tokoph's pilot certificate.
Tokoph appealed the suspension, and, after exhausting the
administrative review and appeals process, found himself facing a
thirty-day suspension of his pilot's certificate. He now petitions
us for review.

## II.   ANALYSIS

### A.   Standard of Review

We accord substantial deference to the NTSB's interpretation
of the statutes and regulations it administers.[2] That deference,
to be sure, is not unlimited: As with any federal administrative
agency, we will not defer to the NTSB's interpretation if it is
"arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law." 5 U.S.C. § 706(2)(A).[3] In other words, we
will not substitute our own judgment for that of the agency and
will affirm unless the agency fails to articulate a rational
relationship between the facts found and the choice made.[4]

### B.   Tokoph's Complaints

Tokoph complains that the NTSB erred in affirming his
violation of § 91.319(c). Tokoph advances three arguments in his
petition for review. First, he claims to have received oral

---

[2] City of Abilene v. U.S. E.P.A., 325 F.3d 657, 664 (5th
Cir. 2003).

[3] See also City of Abilene, 325 F.3d at 664.

[4] See id.

authorization from an FAA Inspector permitting him to operate the F-100 in the way that he did. Second, the operating limitations issued to prior owners of the F-100 contained an exception for takeoffs and landings from the restriction governing flights over densely populated areas. Tokoph argues that it is unfair to deny him equally broad operating authority. Tokoph's third argument is that the flight in question was permitted by the language of § 91.319(c) as a necessary component of the landing or pre-landing phase of flight. After carefully reviewing the facts and legal arguments in the record on appeal and the parties' briefs, we are convinced that his petition must be denied.

Given the airspeed and configuration of the F-100 during Tokoph's approach over the Lordsburg runway, the NTSB determined that no landing could have been made. There is substantial evidence in the record to support this pivotal conclusion, which, as we shall explain, requires us to reject Tokoph's first two claims.[5]

Tokoph's first claim relies on the fact that the FAA Principal Maintenance Inspector (the "Inspector") who issued the aircraft-specific operating limitations for Tokoph's F-100 advised Tokoph orally that he could make reconnoitering approaches over densely populated areas. The Inspector also told Tokoph that he needed nothing in writing to reflect this exception. Tokoph contends that this oral statement by the Inspector either constitutes binding FAA

---

[5] See  Texas Oil & Gas Ass'n v. U.S. E.P.A., 161 F.3d 923, 934 (5th Cir. 1998).

4

authorization or should estop the FAA from charging a violation of § 91.319(c). The NTSB concluded, however, that the Inspector's guidance was limited to the context of landings and takeoffs and that, by his own concession, Tokoph was not landing the F-100 at Lordsburg that day. Again, because there is substantial evidence to support this determination,[6] we will not reverse the NTSB's conclusion that any purported FAA authorization to fly over a densely populated area when landing could not apply to Tokoph's conduct. The NTSB articulated a rational relationship between the facts found and its decision.[7]

Likewise, Tokoph cannot prevail on his second claim, that his approach fell within the takeoffs-and-landings exception contained in the operating limitations governing prior owners of the F-100. Even assuming arguendo that prior owners' operating limitations could be extended to Tokoph, however, the exception could not apply to his conduct. This is because the NTSB determined that Tokoph was not actually landing the F-100. Again, the deference we must accord the NTSB's factual determinations requires us to uphold its decision.

Tokoph's third argument, that the language of § 91.319(c) itself permits his maneuver, also fails. First, it is unclear from Tokoph's appellate brief exactly what language in § 91.319(c) he

---

[6] See id.

[7] See City of Abilene, 325 F.3d at 664.

5

contends authorized his reconnaissance pre-landing approach.[8] More importantly, when, as here, a court reviews an agency's application and interpretation of its own regulations, the standard of review is even more deferential.[9] Under this standard, we cannot conclude that Tokoph's approach is exempted from the prohibitions of § 91.319(c).

### III.  CONCLUSION

Because substantial evidence supports the NTSB's findings, and it cannot be deemed to have acted in an arbitrary or capricious manner, we cannot disturb its disposition of this matter.  For the foregoing reasons, Tokoph's pleas must be rejected.

PETITION DENIED.

S:\OPINIONS\UNPUB\03\03-60183.0.wpd
4/30/04  11:18 am

---

[8] Tokoph argues that the flight in question "was part of the landing or pre-landing phase of flight, was 'necessary,' and is accordingly exempted from the low flight prohibition of 91.319(c) by the language of 91.319 itself, as well as being expressly authorized by the [FAA]'s representative."  Yet, he fails to identify any language that supports this argument.

[9] Texas Coalition of Cities for Utility Issues v. F.C.C., 324 F.3d 802, 811 (5th Cir. 2003).

6